FILED

MAR 10 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AARON MASTERSON, CARLTON BENNETT,
Individually and on behalf of all
Others similarly situated,

             Plaintiffs,

v.                                              Civ. No. 2:13cv62


COMMONWEALTH BANKSHARES, INC.,
et al.,

             Defendants.


<u>OPINION and ORDER</u>

   This matter is currently before the Court on defendants' various objections to the United States Magistrate Judge's Report and Recommendation ("R&R"), which recommended that this Court: (1) grant plaintiffs' motion to take judicial notice of another pending lawsuit in this Court, ECF No. 60; (2) deny two pending motions to dismiss, one filed by defendant E. Carlton Bowyer ("Bowyer"), ECF No. 52, and one collectively filed by several defendants, ECF No. 47; and (3) grant in part, and deny in part, a third pending motion to dismiss filed by defendant Cynthia A. Sabol ("Sabol"), ECF No. 55.  After carefully considering the Magistrate Judge's thorough R&R, defendants' various objections thereto, and the responses to such objections filed by Aaron Masterson and Carlton Bennett (collectively, "Plaintiffs"), this Court conducted a de novo review as to the recommendations in the R&R to which objections were

filed.  Having completed such review, this Court hereby **ADOPTS and APPROVES** the findings and recommendations set forth in the R&R, as supplemented by this Order.

## I. FACTUAL AND PROCEDURAL HISTORY

The parties have filed no objections to the accuracy of the factual and procedural history as detailed in the R&R.  R&R 2-14, ECF No. 75.  Upon review of the R&R and record, this Court finds no clear error as to the factual and procedural background set forth therein.  Therefore, the section of the R&R entitled "Factual and Procedural History" is hereby adopted as an accurate statement of this case's factual and procedural history.[1]  Briefly summarized below are relevant events occurring since the issuance of the Magistrate Judge's R&R.

On January 13, 2014, defendant Bowyer filed an objection to the R&R's recommendation that Bowyer's motion to dismiss be denied.  Specifically, Bowyer objected to the following: (1) the R&R's failure to squarely address Bowyer's claim that the amended complaint "conclusively establishes" that Bowyer has a valid affirmative defense; (2) the pleading standard applied by the Magistrate Judge

---

[1] While not directly relevant to the objections addressed here, the Court also notes that after the issuance of the R&R, this Court issued an Opinion and Order in SEC v. Woodard, Civ. No. 2:13cv16, ECF No. 63.  In such Order, the Court denied the motion to withdraw as counsel filed by the attorneys for defendant Stephen G. Fields and discussed, at length, Rule 17 of the Federal Rules of Civil Procedure and such Rule's cross-reference to the Virginia statutes governing an incarcerated inmate's capacity to be sued.  As the instant case proceeds, the parties will need to consider how to address such issue in the context of this case.

with respect to "control person" liability under Section 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78t(a); and (3) the recommendation of the Magistrate Judge that the amended complaint contains sufficient facts to demonstrate that Bowyer was a "control person" under Section 20(a) of the Exchange Act.[2]

On January 13, 2014, defendant Sabol also filed objections to the R&R. Specifically, Sabol objected to the following: (1) the recommendation that her motion to dismiss be denied, in part;[3] (2) the recommendation that Plaintiffs' claims be deemed timely filed; and (3) the recommendation that Plaintiffs be provided a second opportunity to amend their complaint as to the direct liability claims against Sabol.

On that same date, defendants Morton Goldmeier, Thomas W. Moss, Jr., Herbert Perlin, Kenneth Young, William D. Payne, Laurence Fentriss, and Raju V. Uppalapati (collectively, the "Director Defendants"), filed a collective objection to the R&R's

---

[2] The conclusion to Bowyer's objections to the R&R seeks dismissal of Counts I and II of the amended complaint as to defendant Bowyer. ECF No. 81, at 15. However, the amended complaint does not name Bowyer in Count I, and neither Bowyer's motion to dismiss, nor his objections to the R&R, contend that the defendants that are named in Count I did not violate federal securities laws as alleged in Count I. Accordingly, to the extent Bowyer seeks dismissal of Count I of the amended complaint, such unsupported prayer for relief is denied.

[3] Similar to the second and third objections advanced by Bowyer, Sabol's first objection contends that the Magistrate Judge applied the wrong pleading standard with respect to "control persons" and argues that, even under such standard, the facts in the amended complaint fail to demonstrate that she qualifies as a "control person."

recommendation that their collective motion to dismiss be denied. Similar to an objection advanced by both Sabol and Bowyer, the Director Defendants objected to the Magistrate Judge's proposed finding that the amended complaint contains sufficient facts to demonstrate that they are "control persons" within the definition applicable to claims under Section 20(a) of the Exchange Act.

On January 27, 2014, Plaintiffs filed three briefs with the Court responding to the objections discussed above.  Plaintiffs have not, either within such filings or by separate document, objected to the Magistrate Judge's recommendation that this Court grant, in part, Sabol's motion to dismiss.

## II. STANDARD OF REVIEW

As set forth in the conclusion of the R&R, "any party may serve and file written objections" to the proposed findings and recommendations set forth in the R&R within fourteen (14) days after service of the R&R.  28 U.S.C. § 636(b)(1).  "The Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)) (alteration in original).  As to those portions of the R&R that no party has challenged through advancing a "'specific written objection,' [a] district court [is] free to adopt [the] magistrate judge's

4

recommendation . . . without conducting a de novo review." Id. at 316. As to these unchallenged portions, the reviewing court need only "'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Id. at 315 (quoting Fed. R. Civ. P. 72 Advisory Committee's Note).

## III. DISCUSSION

### A. Unobjected-to Portions of R&R

Having carefully reviewed the Magistrate Judge's detailed R&R, relevant case law, and the relevant portions of the record, this Court is satisfied that there is no clear error as to any portions of the R&R for which objections were not received. Diamond, 416 F.3d at 315. Although such finding applies to all portions of the R&R that were not objected-to, most notably: (1) no objections were received from Plaintiffs with respect to the recommendation that Sabol's motion to dismiss be granted, in part; and (2) no objections were received from Sabol with respect to the recommendation that this Court take judicial notice of the filing of a complaint by the Securities and Exchange Commission, in another civil case, against Sabol and other defendants. See SEC v. Woodard, Civ. No. 2:13cv16. Accordingly, this Court hereby **ADOPTS** the findings and recommendations set forth in the R&R as to these matters. Sabol's motion to dismiss is therefore **GRANTED**, **in part**, to the extent it seeks dismissal of Count I, which alleges that Sabol directly violated Section 10(b) of the Exchange Act and associated

regulations. Additionally, Plaintiffs' motion for judicial notice is **GRANTED,** and this Court therefore takes notice of the separate pending civil suit against Sabol and the existence of various allegations in the complaint in such separate suit. However, as explained in the R&R, the fact that the Court takes judicial notice of mere allegations in a complaint in an entirely different lawsuit does not mean that such allegations are accepted as true for the purposes of resolving the pending motions to dismiss.

## B. De Novo Review of Objections

As summarized above, the three filings advancing objections received by the Court challenge the R&R as follows: (1) the R&R applies the wrong legal test with respect to "control person" liability (Bowyer and Sabol); (2) the R&R improperly concludes that the amended complaint contains sufficient facts to allege that defendants were "control persons" (Bowyer, Sabol, and Director Defendants); (3) the R&R fails to squarely address Bowyer's claim that the amended complaint "conclusively establishes" that he has a valid affirmative defense (Bowyer); (4) the R&R improperly concludes that Plaintiffs' claims are timely (Sabol); and (5) the R&R improperly recommends that Plaintiffs be provided a second opportunity to amend their complaint to add facts supporting their Count I direct liability claim against Sabol (Sabol). Below, this Court separately addresses, and rejects, each objection.

### 1. Improper Legal Test

As summarized in the R&R, Count I of the Amended Complaint asserts direct liability claims under Section 10(b) of the Exchange Act against the corporate defendant Commonwealth Bankshares, Inc. ("Commonwealth"), and certain named individuals, including Edward J. Woodard ("Woodard"), Commonwealth's Chairman, President, and Chief Executive Officer ("CEO"), and Sabol, Commonwealth's Chief Financial Officer ("CFO").  Count II asserts derivative liability claims, also referred to as "control person liability" claims against Bowyer, Sabol, and the Director Defendants, among others, based on violations of Section 20(a) of the Exchange Act.  Such derivative liability claims are based on the theory that the individuals named in Count II had the authority to control the persons or entities that committed the direct 10(b) violations.  See Yates v. Municipal Mortg. & Equity, LLC, --F.3d--, 2014 WL 890018, at *15 n.8 (4th Cir. 2014) (noting that "Section 20(a) liability is derivative of § 10(b)").

It is undisputed that, in order to state a claim of control person liability, a complaint must allege: (1) a "predicate violation of § 10(b)"; and (2) "control by the defendant over the primary violator."  In re Mutual Funds Investment Litigation, 566 F.3d 111, 129-30 (4th Cir. 2009) rev'd on other grounds sub nom. Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011).  However, defendants Bowyer and Sabol argue that a third element,

"culpable participation" must also be pled in order to establish a prima facie case and survive a motion to dismiss.    A circuit split exists as to whether a plaintiff must plead facts sufficient to plausibly allege "culpable participation," or whether a control person's lack of knowledge of an underlying Section 10(b) offense is an affirmative defense.    See In re MicroStrategy, Inc. Sec. Litigation, 115 F. Supp. 2d 620, 660 n.76 (E.D. Va. 2000) ("[A]lthough courts that have addressed this issue are split as to whether a plaintiff must show that a defendant culpably participated in the underlying violation of the securities laws . . . the majority of courts—including the Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits—only requires a plaintiff to establish a primary violation and control by the controlling person over the controlled person."); Huttenstine v. Mast, No. 4:05cv152, 2006 WL 3771096, at *6 (E.D.N.C. Dec. 21, 2006) (agreeing with the majority of circuits, and MicroStrategy, that "Plaintiffs need not allege 'culpable participation' . . . as part of their prima facie case").

As explained by the Magistrate Judge in his detailed R&R, in 2009, the Fourth Circuit favorably cited MicroStrategy, and adopted the approach followed by a majority of circuits by stating:

> A claim of control person liability must allege: (1) a predicate violation of § 10(b) and (2) control by the defendant over the primary violator. Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (10th Cir. 1998). "[O]nce the plaintiff establishes the prima facie case [of control], the burden shifts to the defendant to show lack of culpable participation or knowledge." Id.

8

In re Mutual Funds Investment Litigation, 566 F.3d at 129-30. Notwithstanding the defendants' various arguments suggesting the contrary, this Court is obligated to follow such published on-point precedent.  The Supreme Court's reversal of the Fourth Circuit's ruling in that case was unrelated to the pleading standard applied therein, and although the Fourth Circuit's analysis on the pleading standard was direct and to the point, the opinion not only favorably cited MicroStrategy and indicated that only two elements must be pled, but stated that lack of culpable participation is a defense to be proven by a defendant.  Id.  Furthermore, even if such case was not controlling, this Court agrees with the detailed analysis in MicroStrategy, in which the district court concluded that "the language of the Exchange Act in general and Section 20(a) in particular compel the conclusion that Plaintiffs do not have to plead culpable participation in their Complaint to state a claim under Section 20(a)."  MicroStrategy, 115 F. Supp. 2d at 659-61.  This Court also agrees with Plaintiffs, the R&R, and the MicroStrategy opinion's finding, that the Fourth Circuit's opinion in Carpenter v. Harris, Upham & Co., 594 F.2d 388 (4th Cir. 1979) is inapposite to determining the proper pleading standard because that case was decided at the summary judgment stage, and affirmative defenses were properly before the Court.

Based on the above, this Court adopts and approves the R&R's analysis on this issue, and rejects Bowyer's and Sabol's claims that the Magistrate Judge applied the wrong legal test when evaluating the sufficiency of the amended complaint.  The motions to dismiss are therefore **DENIED** as to the claim that the amended complaint is deficient for failing to allege "culpable participation."

### 2. Improper Factual Evaluation

All of the defendants filing objections to the R&R contend that the amended complaint contains insufficient facts to demonstrate that such individuals are "control persons."  The Fourth Circuit has squarely addressed the legal meaning of "control" for the purposes of pleading a Rule 20(a) violation, explaining that "to plead the control requirement, a plaintiff must plead[ ] facts showing that the controlling defendant had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability."   In re Mutual Funds Investment Litigation, 566 F.3d at 130 (internal quotation marks and citations omitted) (omissions in original).  Zeroing in on the fact that alleging the power to control is sufficient, and that a plaintiff need not plead the exercise of actual control, the Fourth Circuit went on to explain:

SEC regulations define "control" as "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2 (2008); see also H.R. Rep. No. 73-1383, at 26 (1934) ("[W]hen reference is made to 'control', the term is intended to include actual control as well as what has been called legally enforceable control."). In making the determination of whether a defendant possessed the requisite control, "the courts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof." Rochez Bros., Inc. v. Rhoades, 527 F.2d 880, 890-91 (3d Cir. 1975). And, ultimately, as a "complex factual question," S.E.C. v. Coffey, 493 F.2d 1304, 1318 (6th Cir. 1974), assessing control person liability is "not ordinarily subject to resolution on a motion to dismiss," and dismissal should be granted only when "a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person," Maher, 144 F.3d at 1306; see also In re Cabletron Sys., Inc., 311 F.3d 11, 41 (1st Cir. 2002) ("Control is a question of fact that 'will not ordinarily be resolved summarily at the pleading stage.' The issue raises a number of complexities that should not be resolved on such an underdeveloped record.") (quoting 2 Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 12.24(1) (4th ed. 2002)) (internal citation omitted).

In re Mutual Funds Investment Litigation, 566 F.3d at 130 (emphasis added).[4]

Here, Plaintiffs' amended complaint alleges that Sabol, Bowyer, and the Director Defendants had "direct and supervisory involvement

---

[4] This Court agrees with Plaintiffs that the "heightened pleading standard" that is applicable to pleading scienter for Section 10(b) direct liability claims is not applicable to pleading the "control" prong of the Section 20(a) derivative liability test. Rather, because Section 20(a) "does not require that the control person act with scienter . . . [or] be directly liable for fraud," no heightened pleading standard applies. Huttenstine, 2006 WL 3771096, at *6. Accordingly, a plaintiff must only satisfy Rule 8(a)'s general pleading standard with respect to alleging sufficient facts to plausibly demonstrate that a defendant "controlled" a primary violator. Id. at *8.

in the day to day operations of the Company" and that they "had the power to influence and control, and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiffs contend are false and misleading."   Amend. Compl. ¶¶ 98-99, ECF No. 43.   In support of such broad assertions, Plaintiffs' amended complaint discusses the roles that each named defendant had at Commonwealth, primarily through noting Sabol's responsibilities and actions as CFO and Principal Accounting Officer of Commonwealth, and through discussing the fact that Bowyer and the Director Defendants were members of Commonwealth's Board of Directors ("Board") and each served on multiple Board sub-committees.   Id. ¶¶ 13-42.   As to the discussion of the various Board sub-committees, most notably, Bowyer and all but two of the Director Defendants (Fentriss & Uppalapati) served on Commonwealth's "audit committee." Bowyer and all of the Director Defendants served on the "executive committee," and while Fentriss & Uppalapati did not serve on the "audit committee," they both served on the "investment committee." According to the amended complaint, the duties of the audit committee include: (1) reviewing the annual audited financial statements, quarterly statements, including management's discussion of Commonwealth's financial condition and its critical accounting policies and practices prior to the filing of annual 10-K reports and quarterly 10-Q reports; (2) "reviewing the regular internal

reports to management prepared by the internal auditing department and management's responses"; (3) consulting with management and independent accountants regarding the integrity of Commonwealth's internal and external financial reporting process, financial statements and major disclosures as well as the adequacy and effectiveness of the internal controls and disclosure controls.  Id. ¶ 42.  The duties of the executive committee include acting on behalf of the full Board of Directors between Board meetings, which means such committee is authorized "to exercise all of the Board's powers, except for fundamental responsibilities, such as approval of the Articles of Incorporation or a plan of merger or consolidation."  Id. ¶ 37.  The duties of the investment committee include "administering the investment and asset/liability policies" of Commonwealth.  Id.

In addition to the above, the amended complaint expressly identifies numerous financial reports, including annual 10-K reports, quarterly 10-Q reports, and other regulatory filings, that were allegedly fraudulent.  Id. ¶¶ 49-65.  In conjunction with such identification, the amended complaint states which defendants were signatories on each such report.  Id.  While Sabol, Commonwealth's CFO, signed almost every one of these financial reports, Bowyer and each the Director Defendants signed at least two reports that were allegedly fraudulent.  Id.; see Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1109 (10th Cir. 2003) (noting that although an

13

individual's mere status as CFO is normally not alone sufficient to plead control, it is enough when the "actionable claims of securities fraud relate specifically to official reports of the company's financial performance").

Having conducted a de novo review of the law and the factual allegations relevant to the instant issue, the Court hereby adopts the analysis set forth in the Magistrate Judge's R&R concluding that the amended complaint alleges sufficient facts to state a Rule 20(a) control person liability claim against Sabol, Bowyer, and each of the Director Defendants.   Contrary to defendants' arguments, the allegations in the amended complaint are not premised solely on Bowyer's or the Director Defendants' status as "Board members," but are instead premised on: (1) the fact that every defendant signed at least two financial statements alleged to have been fraudulent; (2) the fact that, in addition to their signatures, Sabol's position as CFO, and Bowyer's, Goldmeier's, Moss', Perlin's, Young's, and Payne's membership on the audit committee made them responsible for, and thus gave them control over, the accuracy of the financial statements being disclosed to the public, see In re Enron Corp. Securities, Derivative & ERISA Litigation, 258 F. Supp. 2d 576, 598 (S.D. Tex. 2003) ("A number of courts have held that a corporation's Audit Committee members, who are authorized to sign and do sign the corporation's financial documents and registration statements, are controlling persons for liability under § 20(a) in the 1934 Act"),

In re Livent, Inc. Noteholders Securities Litigation, 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001) ("An outside director and audit committee member who is in a position to approve a corporation's financial statements can be presumed to have 'the power to direct or cause the direction of the management and policies of' the corporation, at least insofar as the 'management and policies' referred to relate to ensuring a measure of accuracy in the contents of company reports and SEC registrations that they actually sign" (quoting 17 C.F.R. § 240.12b-2)); and (3) the fact that Bowyer and every Director Defendant was a member of the "executive committee," which had virtually all the powers of the full Board of Directors between Board meetings.[5]

---

[5] The amended complaint advances additional facts that bolster the finding that the Director Defendants are control persons, including their ability to obtain loans/initiate related party transactions, and their ownership interests in Commonwealth.  Amend. Compl. ¶¶ 24-33.  The Court acknowledges that the question regarding the sufficiency of the allegations is a closer question with respect to defendants Fentriss and Uppalapati because they were not members of the audit committee, which had a more active role in ensuring the accuracy of Commonwealth's financial reporting.  That said, Fentriss and Uppalapati both signed publicly disclosed financial statements that are alleged to have been fraudulent.  More specifically, both Fentriss and Uppalapati signed the 2009 10-K annual statement, which purportedly acknowledged "a single internal control deficiency" at Commonwealth, but "falsely stated that the deficiency was being addressed with a remediation plan."  Id. ¶ 60.  Such annual statement also purportedly "failed to disclose the systemic internal control failures that allowed the criminal conduct concealing the Company's true financial condition to continue."  Id.  Moreover, both Fentriss and Uppalapati were on the executive committee and the investment committee, among others.  Fentriss also owned approximately 7% of Commonwealth's stock, and Uppalapati caused Commonwealth to enter into material related party transactions.  Id. ¶¶ 32-33.  Taking all these facts together, this Court concludes that the amended complaint includes sufficient facts to plausibly allege that Fentriss and Uppalapati were "control persons."

As stated by the Fourth Circuit, not only is control a complex factual inquiry not ordinarily suitable for resolution through the filing of a Rule 12(b)(6) motion, but control is measured by direct or indirect possession of the "power to direct or cause the direction of the management and policies" as contrasted with the actual exercise of such power. In re Mutual Funds Investment Litigation, 566 F.3d at 130; see MicroStrategy, 115 F. Supp. 2d at 661 ("A plaintiff satisfies the control requirement under this definition by pleading facts showing that the controlling defendant 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'" (quoting Brown v. Enstar Group, Inc., 84 F.3d 393, 396 (11th Cir. 1996))). Here, the amended complaint sufficiently alleges that Sabol, Bowyer, and each of the Director Defendants had the power to directly or indirectly control the activities and affairs of Commonwealth and the corporate policies at issue in this case, including Commonwealth's financial reporting and internal control policies. Most tellingly, each and every defendant seeking dismissal signed at least two financial statements that were purportedly fraudulent. Amend. Compl. ¶¶ 55, 60. Such signatures, in connection with the signatories' membership on the Board and various sub-committees of the Board, particularly those on the audit

committee, is sufficient to state control—otherwise, the signatures on such financial statements would be meaningless.  Cf. In re CINAR Corp. Securities Litigation, 186 F. Supp. 2d 279, 309 (E.D.N.Y. 2002) (recognizing that district courts in the Second Circuit are "split on whether alleging that a defendant signed a fraudulent SEC filing is sufficient to allege control," and concluding that, as courts on one side of the split have held, it "comport[s] with common sense to presume that a person who signs [his or her] name to a report has some measure of control over those who write the report") (internal quotation marks and citations omitted) (emphasis added).[6]  Moreover, it matters not at this stage in the case whether the Board members knew the records they were signing were false, because scienter was sufficiently pled as to multiple individuals charged with the direct Section 10(b) violations, and "Section 20 of the Exchange Act contains no requirement that plaintiffs must prove a control person's state of mind."  Adams, 340 F.3d at 1109.  The various motions to dismiss the "control person" liability claims set forth in Count II of the amended complaint are therefore DENIED.

---

[6] The Court acknowledges that the briefs objecting to the R&R include cites to district court cases where the court granted a motion to dismiss control person liability claims that were advanced against members of a corporation's board of directors on facts that are arguably similar to the instant matter.  See, e.g., Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101, 1134-35 (W.D. Mich. 1996).  However, in light of the Fourth Circuit's recent statements in In re Mutual Funds Investment Litigation, 566 F.3d at 130, as well as the district court cases cited herein, including In re CINAR Corp., this Court does not find such cases compelling.

### 3. Failure to Address Affirmative Defense

Defendant Bowyer argues in his objections to the R&R that the Magistrate Judge failed to squarely address Bowyer's claim that the amended complaint "conclusively establishes" that Bowyer has a valid affirmative defense. Having conducted a de novo review of this issue, the Court finds that the allegations in the amended complaint do <u>not</u> conclusively establish a valid affirmative defense. Accordingly, regardless of the fact that the R&R included a limited discussion on this point,[7] Bowyer's objection is without merit, and his motion to dismiss fails as to this argument.

At the Rule 12(b)(6) stage, a district court does not consider the merits of affirmative defenses except "in the relatively rare circumstances where . . . all facts necessary to the affirmative defense 'clearly appear[ ] <u>on the face of the complaint.</u>'" <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993) (alteration in original). As Plaintiffs effectively highlight in their response to Bowyer's objections, even accepting as true the fact that Commonwealth's CEO, and other coconspirators,

---

[7] In short, Bowyer argues that the references in the amended complaint to the criminal prosecution and conviction of Woodard, Commonwealth's President and CEO, including steps taken by Woodard, and others, to conceal their fraudulent activities, conclusively prove that Bowyer has an affirmative defense of good faith. While the R&R does not discuss this matter at length, it does state: "While there may be information to support a claim that the Directors were also deceived, those claims are affirmative defenses to be raised at summary judgment or at trial. At this stage, Plaintiffs have pled enough facts to allege section 20(a) liability . . . ." R&R 33-34, ECF No. 75.

concealed certain fraudulent acts from Board members that are named as defendants in this case, the amended complaint still lacks "all facts necessary" to resolve the affirmative defense in favor of Bowyer. Notably, the amended complaint fails to address all of the complex factual questions regarding what exactly was concealed from Bowyer, whether his position on the audit committee gave him more access to evidence of wrongdoing, whether (and when) he discovered any misconduct, and how much he knew when he signed false financial reports. Bowyer's attempt to focus on the fact that he left the Board in June 2010, "well before the end of the class period" is likewise insufficient to warrant dismissal of the claims against him at this early stage in the case because even though misconduct is alleged to have continued after Bowyer's tenure ended, such facts fail to demonstrate that Bowyer had no knowledge regarding the misconduct that occurred while he was a director.[8]

Accordingly, while some information in the amended complaint certainly suggests that Bowyer has a colorable affirmative defense, such suggestion is a far cry from conclusive proof that Bowyer's affirmative defense is meritorious. Accordingly, the instant claim is **DENIED.**

---

[8] Assuming, hypothetically, that Bowyer knew in 2009 or 2010 that senior officers had engaged in misconduct, the facts as set forth in the amended complaint do not foreclose the possibility that Bowyer resigned, retired, or otherwise voluntarily declined to continue serving on the Board because of what he knew and because he wanted to distance himself from such misconduct. If that were the case, the intricacies of the claimed "good faith" affirmative defense would clearly need further factual development.

### 4. Timeliness of Claims

Defendant Sabol objects to the Magistrate Judge's analysis regarding the timeliness of the claims set forth in the amended complaint. Specifically, Sabol asserts that a reasonably diligent investor would have commenced an investigation in January of 2010 when Commonwealth restated its third quarter results from 2009. As discussed below, after conducting a de novo review of this issue, the Court finds that Sabol's argument fails.

First, Sabol fails to show that the facts, as alleged in the amended complaint, demonstrate that a reasonable investor would have launched an investigation in January of 2010 merely because an amended quarterly report was filed by Commonwealth. Second, and more compelling, Sabol fails to demonstrate that, even if such an investigation was launched in January 2010 by a reasonably prudent investor, such individual would have quickly discovered any fraud. See Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 637 (2010) (holding that a cause of action accrues in a private securities action "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first") (emphasis added).

As to the likelihood of "discovery" of fraud, Sabol asserts, without any factual basis, that this Court should "assume" that if an investor launched an investigation in January of 2010, such investor would necessarily have discovered the fraud within a period

20

of a few months.  Although Sabol cites Cohen v. USEC, Inc., 70 F.

App'x 679, 687-89 (4th Cir. 2003) in support of such assertion, she

fails to note that, in Cohen, the information that would have revealed

the "misrepresentation and omissions at issue" was public

information available under the Freedom of Information Act, or

through public litigation documents, or through written

publications.  In contrast, here, Sabol fails to point to any

information properly before this Court that demonstrates that an

investor launching an investigation in January of 2010 would have

had access to information that would have revealed the fraud at issue

in this case.  Because "all facts necessary" to Sabol's affirmative

defense do not clearly appear on the face of the amended complaint,

Sabol's claim fails at the Rule 12(b)(6) stage.  Goodman, 494 F.3d

at 464.

Moreover, as explained by the United States Supreme Court, the

limitations period in a securities fraud case "does not begin to run

until . . . a reasonably diligent plaintiff would have discovered

'the facts constituting the violation,' including scienter."

Reynolds, 559 U.S. at 653 (emphasis added).  Accordingly, even if

a reasonably diligent investor would have noticed "storm warnings"

and thus been on "inquiry notice" that there were concerns about the

accuracy of Commonwealth's financial reports in January of 2010, and

even if inquiry by such an investor would have revealed that the

reports were in fact false, the limitations period is still not

trigged until it is discoverable that such falsity is the result of an <u>intent to deceive or defraud</u>. <u>Reynolds</u>, 559 U.S. at 648-54. Here, Sabol fails to illustrate which facts in the amended complaint prove that more than two years before suit was filed a reasonable investor had access to evidence revealing not only that Commonwealth's financials were not accurate, but that the inaccuracies were intentional and designed to deceive. Accordingly, the Court adopts the recommendation of the Magistrate Judge and **DENIES** Sabol's motion to dismiss on the grounds that the claims are untimely.

### 5. Leave to Amend Complaint

The R&R recommends that this Court grant the motion to dismiss the Section 10(b) direct securities fraud claims against Sabol, but also recommends that this Court grant Plaintiffs' informal request for leave to amend their complaint. Sabol, obviously, agrees with the dismissal recommendation, but objects to the Magistrate Judge's recommendation that Plaintiffs be granted leave to amend. Sabol's objection to the R&R is grounded in: (1) the claimed "futility" of amendment based on Plaintiffs' prior failures to plead sufficient facts to allege a Section 10(b) direct liability claim against her; and (2) purported prejudice that would result from Sabol being required to file another answer. As discussed below, after performing a de novo review of this issue, the Court adopts the Magistrate Judge's recommendation.

Plaintiffs have not filed a formal motion for leave to amend their complaint, which is clearly the preferred practice, but have instead informally requested in their brief in opposition to Sabol's motion to dismiss that Plaintiffs be granted leave to amend should this Court dismiss the Section 10(b) claims against Sabol.   ECF No. 59, at 7.   Although Plaintiffs' failure to file a formal motion may be a sufficient basis to justify dismissal with prejudice in certain circumstances, cf. Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 630-31 (4th Cir. 2008), this Court declines to follow such course here, in part because Plaintiffs have already attempted, albeit unsuccessfully, to incorporate by reference through "judicial notice" the allegations they seek to add against Sabol from the complaint in SEC v. Woodard, Civ. No. 2:13cv16.   Accordingly, even before the R&R was issued, Sabol was on notice of the allegations that Plaintiffs seek to add to the amended complaint.   Moreover, any prejudice that Sabol would suffer as a result of having to file another answer will be mitigated by the fact that Sabol has already filed an answer in the separate civil case responding to the very allegations that Plaintiffs seek to add to their complaint in this matter.   See SEC v. Woodard, Civ. No. 2:13cv16, ECF No. 55. Accordingly, the proposed amendment to the complaint would not be futile, nor would it prejudice Sabol.   Therefore, no valid reason exists to deviate from the general rule that leave to amend "should be freely given."   Balas v. Huntington Ingalls Indus., 711 F.3d 401,

409 (4th Cir. 2013) (citing Fed. R. Civ. P. 15(a)).  Plaintiffs'
request for leave to amend is **GRANTED** to the extent Plaintiffs seek
to add allegations against Sabol that are included in the complaint
in Civil Action No. 2:13cv16.

### IV. CONCLUSION

As set forth in detail above, this Court has performed a "clear
error" review of all portions of the R&R to which no objections were
filed, and has performed a de novo review of all portions of the R&R
to which specific objections were filed.  After performing such
review, the Court hereby **ADOPTS and APPROVES** the findings and
recommendations set forth in the report of the United States
Magistrate Judge filed on December 27, 2013.

Plaintiffs' motion requesting that this Court take judicial
notice of another pending lawsuit is **GRANTED,** ECF No. 60, although
the Court does not consider the facts in the complaint in such
separate case as "evidence," or even "allegations," in the instant
case.

The motions to dismiss filed by Defendant Bowyer and the
Director Defendants are **DENIED,** ECF Nos. 47, 52.  The motion to
dismiss filed by Defendant Sabol is **GRANTED, in part,** as to the direct
liability Section 10(b) claims, which are **DIMISSED without
prejudice.**  ECF No. 55.  Sabol's motion to dismiss is **DENIED, in
part,** as to all other arguments, including Sabol's challenge to the

Section 20(b) control person liability claims and her challenge to the timeliness of the instant suit.

Plaintiffs' informal request for leave to file a second amended complaint is **GRANTED** to the extent Plaintiffs seek to add allegations against Sabol that are already set forth against Sabol in the complaint in Case No. 2:13cv16. Plaintiffs are afforded **ten (10) days** from the date of this Order to file their Second Amended Complaint.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _Mark S. Davis_

Mark S. Davis
United States District Judge

Norfolk, Virginia
March 10 , 2014